**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LABORERS' PENSION FUND and | ) | |
| LABORERS' WELFARE FUND OF THE | ) | |
| HEALTH AND WELFARE DEPARTMENT | ) | |
| OF THE CONSTRUCTION AND GENERAL | ) | |
| LABORERS' DISTRICT COUNCIL OF | ) | Case No. 11 CV 1803 |
| CHICAGO AND VICINITY, and JAMES S. | ) | |
| JORGENSEN, Administrator of the Funds, | ) | |
| | ) | |
| Plaintiffs, | ) | Hon. Sharon Johnson Coleman |
| v. | ) | |
| ACES ENVIRONMENTAL, CORP., a dissolved | ) | |
| Illinois corporation, ACES ENVIRONMENTAL | ) | |
| CONSULTING CORP., an Illinois corporation, | ) | |
| ACES DEMOLITION CORPORATION, an Illinois | ) | |
| corporation, BONNIE COYNE, individually, | ) | |
| DANIEL COYNE, individually, and | ) | |
| PROPERTY RECYCLING SERVICES, CORP., | ) | |
| an Illinois corporation, | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF THE MOTION OF DEFENDANTS,**
**BONNIE COYNE AND DANIEL COYNE, FOR SUMMARY JUDGMENT**

**NOW COME** the Defendants, Bonnie Coyne ("Bonnie") and Daniel Coyne ("Daniel"),

and for their Memorandum Of Law In Support Of Their Motion For Summary Judgment on

Counts II and III of Plaintiffs' First Amended Complaint, state as follows:

**I.      FACTS**

Aces Environmental, Corp. and Aces Environmental Consulting Corporation entered into

an Installment Note ("Note") to repay certain benefit contributions due and owing to the Funds

on February 24, 2010. (Defendants' Local Rule 56.1(a)(3) Statement of Undisputed Material

Facts In Support of Their Motion For Summary Judgment on Counts II and III of Plaintiffs' First

Amended Complaint ("DSOMF"), ¶1).

The Note required payments to be made through February 15, 2012. DSOMF, ¶2.

At the time the Note was entered into, individual Defendants Daniel Coyne and Bonnie Coyne entered into a Guaranty of Payment and Indemnification ("Guaranty"). DSOMF, ¶3.

The Guaranty of Payment and Indemnification provides in relevant part:

> 1.  <u>Guaranty of Payment and Indemnification.</u>   The undersigned guarantees, absolutely and unconditionally:   (a) the payment when due of the entire principal indebtedness and all interest evidenced by the Note during the twenty-four (24) month payment period including interest and liquidated damages for late or unpaid payments due on the Note; and (b) the full and complete payment of any all fees and costs incurred pursuant to default under the terms of the Note, whether litigation is involved or not, and if involved, whether at the trial or appellate levels or in pre- or post- judgement bankruptcy proceedings in enforcing or realizing upon the obligations of the Guarantor hereunder (the obligations of Guarantor under this Paragraph 1 are collectively hereinafter referred to as the "Obligations"). The Guarantor also agrees to be personally liable for all monthly benefit contributions, union dues and/or wages owed from the Company to the Funds, the District Council, all ancillary funds, and/or the participants that are due at the time the Note and Guaranty are entered into and/or are incurred and become due and owing for the duration of the Note, including all interest, liquidated damages, audit costs, attorneys' fees and costs.

DSOMF, ¶4.

Note is in default and remains fully unpaid as of the date of this Motion. DSOMF, ¶5.

An audit of Aces Environmental, Corp., Aces Environmental Consulting Corporation, and Aces Demolition Corporation for the period of January 1, 2008 through September 30, 2012 has revealed unpaid contributions culminating in a Stipulation of Judgment against Aces Environmental, Corp., Aces Environmental Consulting Corporation, and Aces Demolition Corporation. The last findings on those audits are in the month of January 2012, within the time period of repayment scheduled under the Note. DSOMF, ¶6.

When Bonnie and Dan signed the Guaranty, they understood and agreed that they personally guaranteed payment of Note, the contributions, union dues and/or wages that were owed for the duration of the Note which was 2 years or March 15, 2010 through February 15, 2012 and any other "monthly benefit contributions, union dues and/or wages owed from the

Company to the Funds, the District Council, all ancillary funds, and/or the participants that are due at the time the Note and Guaranty are entered into and/or are incurred and become due and owing for the duration of the Note, including all interest, liquidated damages, audit costs, attorneys' fees and costs. DSOMF, ¶7.

Bonnie and Daniel did not agree to personally guarantee payment for any monies that the Funds now claim are owed pursuant to an audit of the Company for the period of time preceding March 15, 2010. The "monthly contributions" as defined in the Guaranty that Bonnie and Daniel personally guaranteed are contributions that were due on a monthly basis on and after March 15, 2010 i.e. March 15, 2015, April 15, 2015, May 15, 2015, etc. The money alleged due pursuant to the audit does not represent "monthly contributions" that were due at the time Bonnie and Daniel signed the Guaranty or on a monthly basis after they signed the Guaranty. The Guaranty does not state and Bonnie and Daniel did not agree to personally guarantee payment for any money that an audit of the Company showed was owed by the Company before March 15, 2010. DSOMF, ¶8.

Neither Bonnie nor Daniel drafted the Note or the Guaranty. Rather, they were drafted by the Fund. DSOMF, ¶6.

## II. LEGAL STANDARD

Under the Federal Rule of Civil Procedure 56(c), summary judgment is required "If the pleadings, depositions,...and admissions on file, together with affidavits, if any, "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); See Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the burden of establishing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. See New Burnham Prairie Homes, Inc. v. Village of Burnham, 910 F.2d 1474 (7th Cir. 1990). As set forth below, there is no material fact in dispute

and Jenni is entitled to judgment as a matter of law.

### III.     ARGUMENT

Summary Judgment should be entered in Defendants' favor for 2 reasons.     First, Plaintiffs' state law claims in Counts II and III for breach of Guaranty should be dismissed because Plaintiffs' federal claims have been resolved in Counts I, II and III.

Second, in the event that the breach of Guaranty claims are not dismissed, summary judgment should be entered in favor of Defendants on Plaintiffs' claims that cover the period of time prior to March 15, 2010.     Defendants are not contesting liability for the priod on and after March 15, 2010.

### A.  PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED

Plaintiffs' claims for breach of Guaranty against Bonnie and Daniel in Counts II and III should be dismissed for the following reasons.

Count I Of Plaintiffs' First Amended Complaint was dismissed on February 18, 2016 [Doc. 93].     The history leading up to the dismissal of Count I is summarized as follows. Plaintiffs filed their initial Complaint in this matter on March 15, 2011.     Plaintiff asserted three Counts.     In Count I, Plaintiffs alleged claims for defaulting on an installment note and to impose liability against Aces Demo. for a judgment previously entered against Aces Environmental Corp., Bonnie Coyne and Daniel Coyne on May 12, 2010.

On November 29, 2011, Judge George W. Lindberg dismissed Count I. See Memorandum Opinion and Order [Doc. 37] ("Memo. Opinion").     Judge Lindberg held that "As to the claim for defaulting on an installment note, that claim is based on a breach of contract.     A breach of contract claims is a state law claim over which this court does not have original jurisdiction." Memo.Opinion, p. 2.

Plaintiffs also argued to Judge Lindberg that he should exercise supplemental jurisdiction over the claims in Count I pursuant to 28 U.S.C. 1367 based upon the claims in Counts II and III. In Count II, Plaintiffs alleged that Defendants failed to submit benefit contributions. In Count III, Plaintiffs alleged that Defendants failed to submit dues. However, Judge Lindberg rejected Plaintiffs' argument. In rejecting Plaintiffs' argument, Judge Lindberg cited well-established law that "'in certain classes of cases -- that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy.'" Memo. Opinion, p. 2, quoting Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546, 552 (2005) citing United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1996).

Judge Lindberg held that the claims in Count I are not part of the same case or controversy as the claims made in Counts II or III. Judge Lindberg explained that Count I concerns ERISA contributions for the period of January 2005 through July 2009 whereas Counts II and III concern ERISA contributions for the period of September 2010 forward. Memo.Opinion, p. 3.

In Plaintiff's First Amended Complaint that was filed on October 6, 2015 [Doc. 84]("FAC"), Plaintiffs make the same allegations in Count I as they made in Count I of their Complaint and have now added PRS to Count I as a defendant in addition to Aces. Demo. In Count I of their FAC, Plaintiffs allege that Aces. Demo. and PRS are liable for the contributions that are allegedly owed for the period from January 2005 through July 2009 that were incorporated into an Installment Note that was defaulted upon and resulted in the entry of a judgment. In Counts II and III, Plaintiffs allege that Defendants are liable for payment of contributions and dues respectively based upon an audit that was performed for the period from January 1, 2008 through

September 30, 2012.

The claims made in Count I, which are based upon monies allegedly owed on a defaulted Installment Note and an outstanding Judgment, are not part of the same case or controversy as the claims made in Counts II or III that are based upon an Audit.

As a result, Defendants moved to dismiss Count I of Plaintiffs' FAC which was granted on February 16, 2016 [Doc. 93].

With regard to the federal claims asserted by Plaintiffs under ERISA in Counts II and III, on October 9, 2017 the parties filed a Stipulation Of Judgment on the federal claims asserted by Plaintiffs [Doc. 144].    Given the resolution of the federal claims, the Court must consider whether to exercise its supplemental jurisdiction over Plaintiffs' remaining state law claims. Where a district court has original jurisdiction over some claims, it has supplemental jurisdiction over other claims that are so related that they form part of the same case or controversy. 28 U.S.C. § 1367(a); Miller v. Herman, 600 F.3d 726, 738 (7th Cir. 2010). If the court has dismissed all claims over which it has original jurisdiction, the court's supplemental jurisdiction persists, but the court has discretion to decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3); Miller, 600 F.3d at 738 (noting that the decision whether to exercise supplemental jurisdiction is "squarely within [the district court's] discretion"). As the Seventh Circuit consistently has stated, "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." Groce v. Eli Lilly & Co., 193 F.3d 496, 501 (7th Cir. 1999); see also Wright v. Associated Ins. Co., Inc., 29 F.3d 1244, 1251 (7th Cir. 1994) ("When all federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish

supplemental jurisdiction[.]"); <u>Patrick v. City of Chicago</u>, 662 F. Supp. 2d 1039, 1068 (N.D. Ill. 2009) (granting summary judgment in favor of defendants on federal claims and declining to exercise supplemental jurisdiction over state law claims). Exceptions to this general rule exist:

> (1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided.

<u>Davis v. Cook Cty.</u>, 534 F.3d 650, 654 (7th Cir. 2008) (citation and internal quotation marks omitted).

Here, none of the exceptions applies. First, Illinois has adopted a "rule of tolling," which provides that if an action "is dismissed by a United States District Court for lack of jurisdiction, * * * then, whether or not the time limitation for bringing such action expires during the pendency of such action, the plaintiff * * * may commence a new action [in state court] within one year or within the remaining period of limitation, whichever is greater, after * * * the action is dismissed by a United States District Court for lack of jurisdiction." 735 ILCS 5/13-217; <u>see also</u> <u>Davis</u>, 534 F.3d at 654; <u>White v. City of Chicago</u>, 149 F. Supp. 3d 974, 983-84 (N.D. Ill. 2016).

Second, this Court has not yet committed "substantial judicial resources" to considering the merits of Plaintiffs' state law claims. See <u>Davis</u>, 534 F.3d at 654 ("the district court disposed of the federal claims on summary judgment, and so 'substantial judicial resources' have not yet been committed to the case").

Third, it is not clearly apparent how the state law claims would be decided. The Guaranty itself states in paragraph 18 that the Guaranty and the transactions evidenced hereby shall be

7

construed and interpreted under the laws of the State of Illinois. See Guaranty of Payment and Indemnification which is attached to Plaintiffs' Statement of Material Facts as Exhibit A-2, para. 18 [Doc. 148].   Under these circumstances, the usual rule applies and dictates dismissal without prejudice of Plaintiffs' state law claims in Counts II through III.

## B.  DEFENDANTS ARE NOT LIABLE UNDER THE GUARANTY PRIOR TO 3/15/10

In the event that the breach of Guaranty claims are not dismissed, summary judgment should be entered in Defendants' favor on claims asserted for the time prior to March 15, 2010. The meaning of a guaranty agreement is a matter of law to be determined by the court. See Cohen v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago, 618 N.E.2d 1060, 1063, 248 Ill. App. 3d 188, 188 Ill. Dec. 490 (1993) (citing Exch. Nat'l Bank of Chicago v. Bergman, 505 N.E.2d 1236, 1237, 153 Ill. App. 3d 470, 106 Ill. Dec. 445 (1987)). If the language of the guaranty is unambiguous, "it must be enforced as written." TH Davidson & Co. v. Eidola Concrete, LLC, 972 N.E.2d 823, 825, 2012 IL App (3d) 110641, 362 Ill. Dec. 108 (2012) (citing McLean Cnty. Bank v. Brokaw, 519 N.E.2d 453, 456, 119 Ill. 2d 405, 116 Ill. Dec. 561 (1988)).

The language of a guaranty "is ambiguous only if it is susceptible to having more than one meaning.'" Chromalloy Am. Corp. v. Fields, Nos. 90 C 6459, 90 C 6460, 1992 U.S. Dist. LEXIS 2019, 1992 WL 38975, at *2 (N.D. Ill. Feb. 26, 1992) (quoting Flora Bank & Trust Co. v. Czyzewski, 583 N.E.2d 720, 725, 222 Ill. App. 3d 382, 164 Ill. Dec. 804 (1991)). If there is "doubt that arises from the contract language," then the guaranty "is to be strictly construed in favor of the guarantor." Household Fin. Servs., Inc. v. Mortg. Grp., No. 01 C 5567, 2004 U.S. Dist. LEXIS 21878, 2004 WL 2457781, at *12 (N.D. Ill. Oct. 28, 2004) (citing T.C.T. Bldg. P'ship v. Tandy Corp., 751 N.E.2d 135, 139-40, 323 Ill. App. 3d 114, 256 Ill. Dec. 82 (2001)).

Ambiguous contractual language is generally construed against the drafter of the language. Weiland Tool & Manufacturing Co. v. Whitney, 44 Ill.2d 105, 116, 251 N.E.2d 242 (1969).

In this case, Defendants did not personally guarantee any debts that were alleged due as shown on an audit performed for the period of time before March 15, 2010. When Bonnie and Daniel signed the Guaranty, they understood and agreed that they personally guaranteed payment of Note, the contributions, union dues and/or wages that were owed for the duration of the Note which was 2 years or March 15, 2010 through February 15, 2012 and any other "monthly benefit contributions, union dues and/or wages owed from the Company to the Funds, the District Council, all ancillary funds, and/or the participants that are due at the time the Note and Guaranty are entered into and/or are incurred and become due and owing for the duration of the Note, including all interest, liquidated damages, audit costs, attorneys' fees and costs. DSOMF, ¶7.

A logical reading of the Guaranty is that Bonnie's and Daniel's liability only extended to payment of the Installment Note and to obligations incurred on and after March 15, 2010 rather than to obligations prior to March 15, 2010.

Bonnie and Daniel state that did not agree to personally guarantee payment for any monies that the Funds now claim are owed pursuant to an audit of the Company for the period of time preceding March 15, 2010. The "monthly contributions" as defined in the Guaranty that Bonnie and Daniel personally guaranteed are contributions that were due on a monthly basis on and after March 15, 2010 i.e. March 15, 2015, April 15, 2015, May 15, 2015, etc. The money alleged due pursuant to the audit does not represent "monthly contributions" that were due at the time Bonnie and Daniel signed the Guaranty or on a monthly basis after they signed the Guaranty. The

9

Guaranty does not state and Bonnie and Daniel did not agree to personally guarantee payment for any money that an audit of the Company showed was owed by the Company before March 15, 2010. DSOMF, ¶8.

There is at least an ambiguity in the Guaranty that must be construed against Plaintiffs because they drafted it.

In light of the foregoing reasons, summary judgment on Plaintiffs' claims that covered the period before March 15, 2010 should be entered in Defendants' favor and those claims should be dismissed.

WHEREFORE, Defendants, Bonnie Coyne and Daniel Coyne and hereby move this Honorable Court to:

A.   Grant their Motion For Summary Judgment;

B.   Dismiss without prejudice Plaintiffs' claims against them under Counts II and III of Plaintiffs' First Amended Complaint;

C.   In the event Plaintiffs' claims are not dismissed, enter summary judgment and dismiss Plaintiffs' claims asserted for the period prior to March 15, 2010; and

D.   Award them such other relief deemed just and equitable.

Respectfully submitted,
BONNIE COYNE AND DANIEL COYNE

By:      /s/ Joseph P. Berglund_____
            Their Attorney

Attorney For Bonnie Coyne and Daniel Coyne
Joseph P. Berglund
LAW OFFICES OF JOSEPH P. BERGLUND, P.C.
1010 Jorie Boulevard, Suite 370
Oak Brook, Illinois 60523
Tel: (630) 990-0234
Email: Berglundmastny@aol.com

11